G. B. DUNN ET AL. *v.* WM. DOWNING'S EX'RS.

**Landlord and Tenant—Action on Lease—Answer.**

An answer held not sufficient to amount to a plea of non est factum in an action on a lease.

**Landlord and Tenant—Answer—Petition.**

The allegations of an answer were held such as to amount to a confession of the allegation of an amended petition, that defendants signed the lease as sureties of the lessee.

APPEAL FROM GARRARD CIRCUIT COURT.

December 19, 1873.

OPINION BY JUDGE PETERS:

This action was brought by appellees, executors of William Downing, deceased, against J. B. Dunn, R. B. Dunn, and G. B. Dunn; and it is alleged in the petition that the testator, on the —— day of Oct., 1867, entered into a written contract with the defendants, the said Dunns, whereby the said Downing rented to them his farm in Garrard County; that they were to retain possession of the pasture ground until the 15th of April, 1869; that Downing was to have possession of one-half of the house, lot, garden, and stable, on the 1st of Jan., 1869, and also the privilege of sowing grass seed or small grain on any part of the land cultivated, in the fall of 1868 or spring of 1869. The party of the second part said J. B. Dunn was not to pasture certain lands, with certain exceptions specifically set out in the contract aforesaid, filed as a part of the petition marked A; and that said Downing reserved out of the renting a certain house and grounds described in said written contract. Plaintiffs state that the term extended from the 15th of April, 1868, to the 1st of Jan., 1869, except as to the pasture lands, which the defendant, J. B. Dunn, had the privilege of retaining till the 15th of April, 1869; that the said J. B. Dunn, R. B. Dunn and G. B. Dunn, in consideration of the renting aforesaid, covenanted, bound and obligated themselves to pay to said William Downing, the sum of $1,100; and that by virtue of said contract, said J. B. Dunn took possession of said rented premises, and retained the same to the end of the term; but that said defendants had failed to pay to decedent, Downing, said sum of money, or any part thereof, during his life, and had failed and neglected to pay to plaintiff's the same or any part thereof, since his death. Wherefore they pray judgment, etc.

The writing referred to and made part of the petition is in the following words:

"This article of agreement made and entered into this —— day of October, one thousand eight hundred sixty-seven, between William Downing, party of the first part, and J. B. Dunn, party of the second part, witnesseth:

"Party of the first part has this day rented his farm in Garrard County to the said party of the second part hereto, possession of the 'pastor' ground until the 15th of April, 1869. Party of the first part is to have one-half possession of house and lot and garden

and stable, the 1st of Jan., 1869. Party of the first part has privilege of sowing small grain, or grass seed on any part of the land cultivated in the spring of 1869, or fall of 1868; and the party of the second part is not to 'pastor' any of the land in cultivation; nor to pasture any of the land in clover. Party of the second part is to have the privilege of putting the two fields next to Thomas E. Hudson's in corn, the one Hudson had in wheat, and the field, George Kurtz in corn, also the old orchard in corn. Party of the second part has the privilege of sowing small grain in the field that is now in corn and oats, tended by Moore, near Morgan Dickerson's, and the field on the hill, that was in wheat this year, also the field near Mrs. Kurtz, except the field on the hill and the field Moore had in corn, which the party of the second part has the privilege, in case the oats fall down, or otherwise cannot be cut, to pasture it, but the stock to be taken off as soon as the ———— is eaten up. Party of the first part reserves the house and lot where Mrs. Kurtz now lives, also the pond lot adjoining ————— . Party of the second part has the privilege of getting fire wood from any of the fallen timber not fit for rails, or any part of the old apple orchard. Party of the second part is to pay party of the first part eleven hundred dollars for the rent of said farm land. Party of the second part is to cut the 'bryers' and bushes off the rented place in the months of July, August, September and October, or until Christmas.

"J. B. Dunn,
R. B. Dunn,
G. B. Dunn."

The defendants, G. B. Dunn and R. B. Dunn, filed a demurrer to the petition, which was overruled; and they then filed answers, on which, after pleading payment, they averred that they were not parties "to the contract" sued on, so far "as any of its covenants are concerned"; and they submitted the question whether, by the terms of the writing sued on, they were bound for the performance of any of the covenants contained in said writing, and averred that they made no agreement or contract with the testator in reference to the renting of the lands mentioned in said writing, and denied that they obligated themselves to pay anything on account of any matters set forth in the petition.

To this part of the answer, which was designated as paragraph "No. 2," appellees demurred; and after their demurer was over-

ruled, they moved to strike that part out which was also overruled. Afterwards an amended petition was filed, in which it is alleged that G. B. Dunn and R. B. Dunn executed the covenant sued on as the sureties of J. B. Dunn, another of the covenantors, and that it was agreed and stipulated that said G. B. and R. B. Dunn should so sign as sureties for said J. B. Dunn, and that the covenant so signed by said G. B. Dunn and R. B. Dunn was thus signed by them, although the said J. B. Dunn got possession of the leased premises.

To this amended petition a demurrer was filed by G. B. and R. B. Dunn, but it does not appear in the record that the court made any disposition of the demurrer; they, however, filed an answer to the amended petition, the language of which is neither clear nor perspicuous. In it they state that they were not present when the paper sued on was signed, which was not material, as that may be true, and they may have fully authorized some one else to sign it for them; but they may mean they were not present when J. B. Dunn signed it, as they cannot mean that they were not present when they signed it, and they do not say they did sign it. They further say that they did not know anything of it until long after it was done, which we construe to mean they did not know anything of J. B. Dunn having signed it, until long after he had signed it; for if they mean to say they knew nothing of the signing said paper, and never authorized any one to sign it for them, they could have said so, and squarely made the plea of *non est factum*. Next they say "They do not know, nor have they information sufficient to form a belief as to what was understood and agreed on at the time the paper was signed, or that it was understood and agreed by anything said or done independent of the fact of their names being put to said paper that they executed, or signed the same as security for any one."

This is almost unintelligible, certainly involved, confused and inconsistent with the preceding sentence. From this it appears that at the time the paper was signed they did know that fact. But they did not know or had no information sufficient to form a belief that they signed the paper, independent of the fact, that their names were put to the paper. Why, if the fact did not exist, meet it full, and deny it; but the whole sentence is a studied effort to evade a direct answer. They insist that the amended petition

is not issuable and they do not waive their objection to same by making this answer.

The issues presented by the pleadings, the substance of which are herein recited, were submitted to a jury, and a verdict having been found for the amount claimed in the petition, a judgment was rendered against appellants in conformity thereto, and their motion for a new trial having been overruled, they have appealed to this court. It is declared in express terms in the writing, that it witnesses an agreement made and entered into "between William Downing of the first part, and J. B. Dunn of the second part, and there are no other parties thereto. R. B. Dunn, and G. B. Dunn are not named in the body of the instrument, nor do, or could its stipulations be made to embrace, or apply to them; and their signatures to said instrument would have been unavailing to bind them without additional stipulations. Mere averments that it was intended or understood that they signed it to bind themselves as the sureties of J. B. Dunn, without charging that the stipulations necessary for that purpose were omitted from said writing by mistake or fraud, and a prayer to the proper court to repair the injury sustained by Downing in consequence thereof, and to reform the writing and make it conform to the contract between the parties, these necessary allegations are not made in the petition.

But the allegation of the amended petition is direct and positive, that they signed the writing sued on as the sureties of J. B. Dunn; and that allegation is not denied in the answer; indeed the language of that answer is susceptible of no other construction than an admission of the truth of the allegation, and appellees were entitled to a judgment on the pleadings. Wherefore the judgment is affirmed.

*Dunlap, VanWinkle, for appellants.*

*McKee, Hopper, for appellees.*